**UNITED STATES DISTRICT COURT FOR**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RACHAEL ROSE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:25-cv-01604 |
| | ) | |
| ABBOTT LABORATORIES, INC., | ) | |
| *and* COLLEEN LEWIS, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF**
**THEIR MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiff's response to Defendants' Motion for Summary Judgment does not come close to pointing to a genuine dispute of material fact and instead confirms that summary judgment must be granted. Rose devotes substantial argument to claiming Defendants applied the wrong *prima facie* case framework, yet the only case she cites—*Stookey v. South Shore Transportation Co.*—reaffirms that Ohio discrimination claims follow the *McDonnell Douglas* analysis. The *prima facie* elements Defendants used are exactly the elements Ohio courts apply. And even if the Court was to adopt Rose's alternative formulation, the outcome is unchanged: she still cannot make a *prima facie* showing.

The record undermines Rose's claims. It is uncontested that she knowingly violated Abbott's Code of Conduct, repeatedly submitted false and improperly coded expenses, and sought reimbursement for charges she did not incur or that were personal expenses for which she was not entitled to reimbursement. She ignored clear policies she admits she understood, refused to use her corporate credit card in violation of company requirements, and provided shifting and

1

contradictory explanations during the Employee Relations ("ER") investigation. These facts—none of which Rose meaningfully disputes—foreclose any argument that she was meeting Abbott's legitimate expectations. Without this element, her discrimination claim fails at the starting gate.

Rose's pretext argument is equally baseless. Her assertion that Abbott offered "ever-changing" explanations is pure hyperbole; she identifies no evidence—none—that Abbott's reasons changed at any point. To the contrary, Abbott's justification has remained consistent, fact-based, and documented from day one: Rose violated company policy by submitting false expense reports and was not forthright during the investigation. Rose herself admitted the conduct leading to her termination. No reasonable jury could conclude that sex or gender—not her undisputed misconduct—motivated Abbott's decision.

Rose's hostile work environment claim similarly collapses under the weight of the record. She ignores the controlling *Oncale* framework for same-sex harassment analysis and fails to show that any alleged conduct occurred "because of sex." Her own testimony establishes that the alleged conduct she complains of was directed toward both men and women and therefore cannot support an inference of sex-based animus. Moreover, Rose's own testimony establishes that the alleged conduct was neither severe nor pervasive. And because Rose cannot establish any underlying discriminatory conduct, her aiding-and-abetting claim against Lewis necessarily fails as well.

In short, Plaintiff's brief is long on rhetoric and short on evidence supporting her contentions. She ignores binding precedent, sidesteps undisputed material facts, and offers no basis—legal or factual—on which any of her claims should proceed. Summary judgment should be granted.

## ARGUMENT

**I.     ROSE'S LOCAL RULE VIOLATIONS.**

**A.     The Court Should Disregard Rose's Responses to Abbott's Local Rule 56.1(a)(2) Statement of Material Facts.**

The Court should strictly enforce Local Rule 56.1 and disregard Plaintiff's responses to Abbott's Rule 56.1(a)(2) Statement of Undisputed Facts because they fail to comply with the Rule's clear requirements. *See Ciomber v. Coop. Plus, Inc.,* 527 F.3d 635, 643 (7th Cir. 2008) (district courts may demand strict compliance with Rule 56.1 and may disregard non-compliant submissions). Rose's 56.1(b)(2) Response (ECF 49) violates Local Rule 56.1(e)(2) and 56.1(e)(3) because Rose's responses contain objectionable or immaterial information, or legal argument and fail to contain specific citations to admissible evidence refuting Defendants' Rule 56.1(a)(2) facts:

- She denies or mischaracterizes facts without citing to relevant or admissible evidence or cites to information or testimony that do not contradict Defendants' facts. (See Resp. to SOF ¶¶ 1, 2, 3, 4, 5, 15, 16, 17, 18, 19, 20, 22, 23, 24, 25, 26, 27, 28, 30, 36, 37, 38, 39, 43, 44, 45, 47, 48, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 69, 70. )

- Her responses contain immaterial information, speculation, improper argument, and/or evasive denials. (See *id*. at ¶¶ 1, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 16, 17, 19, 20, 21, 22, 23, 24, 25, 26, 27, 30, 34, 36, 37, 38, 39, 43, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 68, 69, 70.)

Because these responses are improper and non-compliant, Abbott's facts should therefore be deemed admitted. *See Curtis v. Costco Wholesale Corp*., No. 13-C-3432, 2014 WL 4783051, at *2 (N.D. Ill. Sept. 24, 2014), *aff'd*, 807 F.3d 215 (7th Cir. 2015) (disregarding responses lacking specific evidentiary citations); *Gallardo v. Scott Byron & Co.,* No. 12-cv-7202, 2014 WL 126085, at *5 (N.D. Ill. Jan. 14, 2014) (disregarding responses containing immaterial information, legal argument, or evasive denials). As the Seventh Circuit has confirmed, district courts have "discretion to require strict compliance with Local Rule 56.1." *Jackson v. Humana*, No. 18-cv-

02413, 2022 WL 2305322, at *1 (N.D. Ill. June 27, 2022) (quoting *Kreg Therapeutics, Inc. v. VitalGo, Inc.,* 919 F.3d 405, 414 (7th Cir. 2019)).

**B.      The Court Should Disregard Rose's Local Rule 56.1(b)(3) Statement of Additional Facts.**

The Court should also disregard Rose's Statement of Additional Facts ("PSOAF") (ECF 50) because it violates Local Rule 56.1. Courts routinely refuse to consider factual submissions that do not comply with Rule 56.1. *See Brozenec v. First Indus. Realty Trust,* No. 09-6916, 2010 WL 5099995 (N.D. Ill. Dec. 8, 2010); *see also Padilla v. Bailey*, No. 09-C-8068, 2011 WL 3045991, at *2 (N.D. Ill. July 25, 2011) (striking statements that mischaracterize the record); *Spectrum Sys., Inc. v. Eng*, No. 08 C 6647, 2010 WL 3526520, at *5 (N.D. Ill. Sept. 1, 2010) (disregarding unsupported factual submissions).

Rose's PSOAF violates Rule 56.1 in several respects. First, it repeatedly fails to cite admissible evidence and instead relies on misstatements, exaggerations, or citations to evidence that does not support the asserted "facts." (See Resp. to PSOAF ¶¶ ¶¶ 3, 4, 5, 6, 7, 10, 11, 12, 13, 14, 15, 16, 18, 21, 25, 29, 31, 32, 33.) Local Rule 56.1(d)(2) mandates that "[e]ach asserted fact must be supported by citation to the specific evidentiary material … including the specific page number … The court may disregard any asserted fact that is not supported with such a citation." LR 56.1(d)(2). The Court should therefore disregard each non-compliant assertion.

Second, the PSOAF includes statements not based on personal knowledge or that constitute speculation or improper argument. (See Resp. to PSOAF ¶¶ 8, 9, 10, 17, 31, 32, 33.) Such material is not competent evidence under the rules of evidence and may be stricken. *See Bradley v. Work*, 154 F.3d 704, 707 (7th Cir. 1998) (affirming exclusion of hearsay, lay opinions, speculation, and conclusions). These improper "facts" should likewise be disregarded.

Finally, Rose's PSOAF also violates Local Rule 56.1(b)(3) because some asserted facts are not "additional" and are redundant of facts previously stated in Defendants' Statement of Undisputed Fact*s* ("SOF") (ECF 42). (See Resp. to PSOAF ¶¶ 14, 19, 20, 26, 27, 28, 29, 31, 32, 33).

## II.     ROSE HAS ABANDONED HER TITLE VII CLAIMS.

Rose's Response to Defendants' Motion for Summary Judgment does not mention or analyze her Title VII claims whatsoever, and specifically states that she only "asserts three claims under Ohio's antidiscrimination laws: (1) hostile work environment based on sex and gender in violation of R.C. 4112.02(A); (2) wrongful termination based on sex and gender in violation of R.C. 4112.02(A); and (3) aiding and abetting discrimination in violation of R.C. 4112.02(J)." (Resp. at p. 1.) Therefore, Rose has abandoned her Title VII claims and Defendants are entitled to judgment on them as a matter of law. *Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir.2007) (failure to offer opposition to argument constitutes waiver); *Cincinnati Ins. Co. v. Eastern Atl. Ins. Co*., 260 F.3d 742, 747 (7th Cir. 2001) (failure to oppose argument permits inference of acquiescence and "acquiescence operates as a waiver").

## III.    ROSE'S DISCRIMINATORY TERMINATION CLAIM FAILS.

Rose spends significant time in her brief suggesting that Defendants applied an incorrect *prima facie* framework to her Ohio discrimination claims. However, the case Rose relies on, *Stookey v. South Shore Transp. Co.*, 6th Dist. Erie No. E-11-044, 2012-Ohio-3184 (July 13, 2012), confirms that Ohio follows the *McDonnell Douglas* framework in analyzing discrimination claims and that the *prima facie* elements Defendants analyzed in their opening brief are the same elements that are considered under Ohio law. (*Id.* ¶10) Although *Stookey* notes that a plaintiff may also satisfy the comparator element by showing she was replaced by someone outside the protected

class, that nuance does not alter the outcome. Under either formulation, Rose cannot make a *prima facie* showing.

### A. Rose Cannot Make a *Prima Facie* Showing Because She Was Not Meeting Abbott's Legitimate Expectations.

Ohio law, like Seventh Circuit Title VII precedent, requires Rose to establish that she was meeting her employer's legitimate performance expectations at the time of her termination. *Hardy v. The Andersons, Inc.*, 2022-Ohio-3357, ¶ 31 (6th Dist. Sept. 23, 2022) ("a plaintiff must show [she] has the capability of performing the work and that [she] is meeting the employer's legitimate expectations" in order to show that she was qualified for the position as part of a prima facie showing); *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 326 (7th Cir. 2002) (stating that under *McDonnell Douglas*, a plaintiff establishes a prima facie case of sex discrimination if she demonstrates, amongst other elements whether "at the time of termination, she was meeting her employer's legitimate employment expectations").

Rose's response offers only the conclusory assertion—without any analysis—that she was "qualified" based on past accolades and sales metrics. (Resp. at 4.) But her termination was not based on her sales, but rather on the fact that she knowing submitted false expense reports and was not forthright during Abbott's ER investigation. (SOF ¶ 65.) Rose admittedly understood her obligations under Abbott's Code of Conduct and the specific Office of Ethics and Compliance ("OEC") rules governing reimbursement. (SOF ¶¶ 5, 11.) She also knew accurate reporting was required for compliance with the Sunshine Act. (SOF ¶¶ 12–13.) Despite this training, Rose repeatedly mis-coded expenses, including labeling non-parking charges as parking, and sought reimbursement for parking fees she never paid. (SOF ¶¶ 59–62.) She also sought reimbursement for plainly personal items such as a sweatshirt, beverages, a cell phone charger, and towing charges, to which she was not entitled. (SOF ¶ 62.) These violations reflect serious lapses in

honesty and integrity and constitute clear breaches of Abbott's Code of Business Conduct. (SOF ¶ 6.)

Finally, when confronted with these findings during the ER investigation, Rose provided inconsistent and shifting explanations. (SOF ¶¶ 57–68). Her contradictory statements during a Company investigation further underscore her lack of honesty and integrity and reinforce that her conduct violated the Company's Code of Business Conduct. (SOF ¶ 62). On this record, Rose cannot show she was meeting Abbott's legitimate expectations.

**B. Rose Cannot Show that Defendants' Reasons for Terminating Her Employment were a Pretext for Discrimination.**

Rose also fails to present evidence that Defendants' reasons for her termination were pretextual. She asserts—again without support—that Abbott's reasons were "ever-changing" or "inconsistent," but identifies no evidence that Abbott's justification shifted in any way. (Resp. at 5.) The basis for Rose's termination has always been the same: she violated Abbott's Code of Conduct by knowingly submitting false expense reports and by failing to be forthright during the ER investigation. (SOF ¶¶ 57–65.)

Rose's hearsay argument likewise fails. She contends that information Colleen Lewis received during the investigation constitutes inadmissible hearsay. (Resp. to SOF ¶¶ 44–47, 49–51, 53–54, 59, 65.) But Defendants do not offer these communications for their truth; rather, they are offered to show their effect on Lewis's state of mind and to explain Abbott's legitimate, non-discriminatory reasons for termination—both well-recognized non-hearsay purposes. *See Boutros v. Avis Rent A Car Sys., LLC,* 802 F.3d 918, 924–25 (7th Cir. 2015) (holding that out-of-court statements "presented not for their truth but as evidence of Avis's reasons for suspending and then firing" the plaintiff to be "clearly probative" as to whether Avis fired the plaintiff for nondiscriminatory reasons); *Simpson v. Beaver Dam Cmty. Hosps., Inc.*, 780 F.3d 784, 796 (7th

Cir. 2015) (holding that a negative reference from an anonymous staff member of the plaintiff's former employer was not inadmissible hearsay because it had been "considered not for its truth, but to show its effect on the state of mind" of the defendant hospital in rejecting the plaintiff's application for medical staff privileges); *United States v. Hanson*, 994 F.2d 403, 406 (7th Cir. 1993) ("An out of court statement that is offered to show its effect on the hearer's state of mind is not hearsay."); *Corral v. Chicago Faucet Co.*, No. 98 C 5812, 2000 WL 628981, at *5 & n. 4, (N.D. Ill. Mar. 9, 2000) (holding that a co-worker's statement that the plaintiff had made a threat was "admissible on summary judgment not for the truth of the matter asserted, but to show [the decisionmaker's] state of mind and reason for recommending [the plaintiff's] termination").[1]

The record shows unequivocally that Rose admitted to the conduct that formed the basis for her termination. (SOF ¶¶ 57–65.) Violating company policy and being untruthful during an investigation are legitimate, non-discriminatory reasons for termination. Rose identifies no evidence of any discriminatory motive and no reasonable jury could conclude that her sex played any role in Abbott's decision. Her termination-based claims therefore fail as a matter of law.

---

[1] It is unclear from Rose's hearsay argument whether Rose also makes a hearsay objection to Abbott's ER Recommendation for Termination Worksheet ("Termination Worksheet"), which is attached as Exhibit 21 to Defendants' Appendix of Documentary Evidence and Other Materials in Support of their Motion for Summary Judgment. To the extent that she is, the statements contained in the Termination Worksheet are not hearsay for the reasons stated above, and the Termination Worksheet also falls within the business record exception to the hearsay rule, as "(1) the acts recorded therein were reported by a person with knowledge, (2) it was the regular practice of the [Abbott] as a regularly conducted business activity to record such acts, (3) the acts were recorded at or near the time of their occurrence, and (4) the documents are properly authenticated 'unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.'" *Cheli v. Taylorville CUSD #3*, 657 F.Supp.3d 1136, 1145 (ILCD Feb. 17, 2003). See Declaration of Amy Frost in Support of Defendants' Motion for Summary Judgment attached hereto as Exhibit A.

**IV.     ROSE'S HOSTILE WORK ENVIRONMENT HARASSMENT CLAIM FAILS.**

**A.     Rose Has Not Shown That Any Alleged Harassment Was Based on Sex.**

Rose's response ignores a critical fact: both she and Lewis are female. Her claim therefore falls under the same-sex harassment standards articulated by the U.S. Supreme Court in *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75 (1998), which the Ohio Supreme Court has expressly adopted. *Hampel v. Food Ingredients Specialties, Inc.*, 89 Ohio St. 3d 169, 177 (2000). To survive summary judgment, Rose must present evidence that the alleged conduct occurred *because of* sex. *Oncale*, 523 U.S. at 81.

According to the Supreme Court, an actionable hostile work environment claim based on sex or gender in the same-sex context may exist (1) where there is evidence that the harasser is homosexual, (2) where the harasser uses "such sex-specific and derogatory terms" to make it clear she is "motivated by a general hostility to the presence of [members of the same sex] in the workplace," and (3) where direct comparator evidence of how the alleged harasser treated members of both sexes in a mixed-sex workplace suggests discrimination. *Oncale*, 523 U.S. at 80-81.

Rose satisfies none of these. She admits that Lewis directed both men and women to attend customer dinners (SOF ¶¶ 24–25), that the stories Lewis told occurred in mixed-gender groups (SOF ¶¶ 28–32), and that any alleged physical contact was directed toward both male and female employees. (SOF ¶ 30.) Courts have consistently held that conduct—even conduct with a physical or arguably inappropriate element—is not "because of sex" when it reflects general boorishness, immaturity, or equal-opportunity behavior. *Oncale*, 523 U.S. at 80 ("We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations"); *Shearrow v.*

*Easton Enters.*, No. 11 C 50050, 2013 WL 12446231, at *9 (N.D. Ill. July 19, 2013) ("[e]ven physical acts of harassment between [same-sex persons] in the workplace with sexual connotations that constitute assault or battery under state law are not necessarily 'because of sex'" where such acts were motivated by physical domination, personal animosity, or juvenile behavior). Rose has presented no evidence that Lewis's alleged harassing conduct was *because of sex*, and Rose's hostile work environment claims fail as a matter of law.

**B.      Rose Does Not Allege Any Harassment That Was So Severe or Pervasive as to Create a Hostile Work Environment as a Matter of Law.**

Even if the conduct was based on sex (it was not), it falls far short of the "severe or pervasive" standard required to establish a hostile work environment. *Robinson v. Sappington*, 351 F.3d 317, 329 (7th Cir. 2003); *Boss v. Castro*, 816 F.3d 910, 920 (7th Cir. 2016).

Rose never reported any of Lewis's alleged conduct—even though she knew how to do so. (SOF ¶ 31.) The conduct she alleges was infrequent, mild, and non-threatening: non-graphic stories told occasionally in group settings (SOF ¶ 32), a one-time alleged "breast-grabbing" incident that the coworker laughed off (SOF ¶ 29), and a single, vague butt-smack that Rose admits did not upset her (SOF ¶ 30). Moreover, Rose and Lewis saw each other only four to five times a year, making any claim of pervasiveness impossible. (SOF ¶¶ 22–23.) Courts have routinely rejected hostile-environment claims based on far more serious and more frequent conduct. *See Shafer v. Kal Kan Foods, Inc.*, 417 F.3d 663, 666–67 (7th Cir. 2005); *Hilt–Dyson v. City of Chicago*, 282 F.3d 456, 463–64 (upholding summary judgment in favor of defendant where plaintiff's allegations that supervisor rubbed her back, squeezed her shoulder and stared at her chest during a uniform inspection while telling her to raise her arms and open her blazer were isolated incidents that, even if taken together, did not create a sufficient inference of a hostile work environment); *Patt v. Family Health Sys., Inc.*, 280 F.3d 749, 754 (7th Cir. 2002) (holding that eight gender-related

10

comments made by supervisor (department chief surgeon) during course of employment of plaintiff's (a general surgeon), including that "the only valuable thing to a woman is that she has breasts and a vagina," were insufficient to demonstrate hostile work environment).

Rose's claims about customer dinners also lack merit. While Rose argues that "Lewis demanded that Rose subject herself to a client's sexual advances to secure a sale" (Resp. at 8), the record does not support this inflammatory characterization. Rose admittedly had total discretion over which customers to meet, where to go, when to go, and whether to bring coworkers or her manager to the meeting. (SOF ¶¶ 26–27). Occasional one-on-one dinners with physicians—even if unpleasant—are not harassment as a matter of law. *Saxton*, 10 F.3d at 534. The only incident Rose actually reported—when a customer bit her ear—was promptly addressed. Lewis immediately intervened, agreed to remove Rose from interactions with the customer, and no further issues occurred. (SOF ¶¶ 38–42).

Moreover, Rose provided no proof that Lewis' alleged conduct materially interfered with her work performance. *See Milligan-Grimstad v. Stanley*, 877 F.3d 705, 714 (7th Cir. 2017) (granting summary judgment even where offensive conduct was pervasive because the conduct "was not physically threatening, nor *did it interfere with [plaintiff]'s work performance*") (*emphasis added*). In fact, Rose admits that she met quota in 2023, her final year at Abbott, and that Rose was up for a promotion. (PSOAF ¶¶ 2, 4)

In short, nothing in Rose's account would lead a reasonable person to view her work environment as severely hostile or abusive. *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 462–64 (7th Cir. 2002). Summary judgment for Defendants is warranted.

11

## V.   ROSE'S AIDING AND ABETTING CLAIM AGAINST LEWIS FAILS.

For the reasons discussed above, Rose's hostile work environment and wrongful termination claims based on sex and gender fail as a matter of law. Therefore, Rose's aiding and abetting claim against Lewis must also fail because Rose simply cannot establish any underlying unlawful discriminatory conduct by Defendants. *See, e.g.*, *Toth v. Cardinal Health 414 LLC*, No. 1:17-CV-00370, 2020 WL 1275095, at *10 (S.D. Ohio Mar. 17, 2020) ("As Plaintiff's disability discrimination and age discrimination claims fail, his claims of aiding and abetting disability discrimination and age discrimination under Ohio law necessarily fail."); *Demassimo v. Sagamore Hills Twp.*, No. 5:16CV1820, 2017 WL 6344653, at *6 (N.D. Ohio Dec. 11, 2017) ("The aiding and abetting claim fails, because Plaintiff has not established an underlying violation."); *Woolf v. City of Streetsboro*, No. 5:09 CV 1570, 2010 WL 4105550, at *15 (N.D. Ohio Oct. 18, 2010) ("As plaintiff has not established the elements of her sexual discrimination and sexual harassment claims, her claim for aiding and abetting sexual harassment under Ohio law also fails.").

## CONCLUSION

For these reasons, Defendants respectfully request that the court enter summary judgment in their favor on all of Rose's claims.

12

DATED:  February 24, 2026

Respectfully submitted by,

ABBOTT LABORATORIES INC. AND
COLLEEN LEWIS

By: /s/ *Uma Chandrasekaran*
One of Defendants' Attorneys

Uma Chandrasekaran
Illinois Bar No. 6281690
uchandrasekaran@seyfarth.com

Victoria S. Tolbert
Admitted *Pro Hac Vice*
vtolbert@seyfarth.com

SEYFARTH SHAW LLP
233 S. Wacker Drive, Suite 8000
Chicago, IL 60606-6448
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

*Attorneys for Defendants*

13

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that on February 24, 2026, she caused the foregoing document to be filed with the Clerk of the United States District Court for the Northern District of Illinois through the Court's CM/ECF system, which will provide notice to and serve a copy upon all other counsel of record.

/s/ *Uma Chandrasekaran*
Uma Chandrasekaran