# EXHIBIT A

**UNITED STATES DISTRICT COURT FOR
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RACHAEL ROSE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:25-cv-01604 |
| | ) | |
| ABBOTT LABORATORIES, INC., | ) | |
| *and* COLLEEN LEWIS, | ) | |
| | ) | |
| Defendants. | ) | |

**DECLARATION OF AMY FROST IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

I, Amy Frost, declare and state as follows:

1. I am over the age of 18 years old, and I have personal knowledge of the facts contained in this Declaration. If called and sworn as a witness, I could and would testify as to their accuracy.

2. I am a Senior Manager, Employee Relations, in the Employee Relations department of Abbott Laboratories Inc. ("Abbott"). I have been employed by Abbott since December 1998.

3. As a Senior Manager, Employee Relations, I am familiar with the duties and responsibilities of other employees in Employee Relations. I am also familiar with the business records practices of Abbott's Employee Relations department.

4. Employee Relations representatives are responsible for receiving, assessing, and investigating employee concerns and for advising management on performance management and disciplinary actions. Employee Relations representatives prepare various records in connection with their responsibilities. These records include a document called a Recommendation for

Termination Worksheet ("Termination Worksheet"), which is created when Employee Relations is recommending that an employee be terminated for performance and/or misconduct.

5. Termination Worksheets are made at or near in time to when an Employee Relations representative completes their investigation into a concern about an employee. Termination Worksheets contain the assigned Employee Relations representative's recommendations based on their investigation into the specific employee issue. Termination Worksheets and the documentation supporting those Worksheets are kept in the ordinary course of Abbott's regularly conducted business activities, and it is Abbott's regular practice to make and maintain such records. Other employees in Employee Relations and I regularly generate Termination Worksheets and other similar documents in performing our job duties.

6. Jim Curcio ("Curcio") was an Employee Relations Manager at Abbott who retired in August 2025. I worked with Curcio and have knowledge that during his Abbott employment, on or about March 25, 2024, he prepared a Termination Worksheet in connection with Rachael Rose's employment with Abbott, a true and correct copy of which (a) is attached as Exhibit 1 to this Declaration; and (b) was filed as Exhibit 21 to Defendant's Appendix to Abbott's Motion for Summary Judgment in the above-captioned case on December 19, 2025. This Termination Worksheet was created in the same manner as other Termination Worksheets and is maintained as a record in Abbott's Employee Relations department in the ordinary course of Abbott's business.

I declare under penalty of perjury under the laws of the State of Illinois and the United States of America that the foregoing is true and correct.

Executed on February 24, 2026, at Abbott Park, Illinois.


_____
Amy Frost

2

# EXHIBIT 1



# Recommendation for Termination Worksheet
# Performance

**Abbott**

**Today's Date:** 3/25/24

| Employee Name: | Rachel Rose | Division: | AV - Vascular |
|---|---|---|---|
| | | Location/Site: | Remote |
| Employee UPI: | 10496293 | Manager Name: | Colleen Lewis |
| Job Title: | Account Manager Endovascular | Manager Title: | Regional Sales Director |
| Grade: | 14 | ER Partner: | Jim Curcio |
| Hire Date: | 08-26-19 | BHR Partner: | Jimmy Brigham |

## Performance Review History:

| Grades 1 to 17 | |
|---|---|
| **2023 Rating:** Exceeded | **2022 Rating:** Achieved |

## Previous Counseling History (if Applicable):

| Date | Performance Issue(s) | Counseling/Disciplinary Action |
|---|---|---|
| 12-09-23 | Reminder of the requirement to use corporate credit card for all expenses | Email reminder<br>RSD – Tim Powers |
| | | |

The reason for this termination recommendation is that investigation has determined that Rachel Rose has knowingly filed multiple false expense reports. Detailed below are specifics.

Regional Sales Director Colleen Lewis had noticed that Rachel had submitted an excessive amount of out of pocket expenses and what appeared to be excessive amounts charged to parking expenses and food for healthcare providers.

Upon review it was determined that Rachel had submitted multiple parking expense charges at various hospital and clinics where there is no parking fees and no valet services. It was also identified that other out of pocket parking expenses commonly exceeded the parking or valet fees at hospitals in which there were parking fees.

- Since January of 2023 to present Rachel submitted out of pocket parking expenses on 13 occasions for a total of $226 at locations where there are no parking fees or valets. The dollar amounts varied from $10 - $20 on these submittals.
    - When interviewed Rachel initially explained that this was cash or Apple Pay for parking and valet services. That the amounts varied depending on the fee or that she only had a $10 or $20 bill. Also that she would vary it if she was asking the valet to help her carry a lot of material. When advised that it was confirmed that these locations have no fees or valets, Rachel than changed her explanation and said that more senior sales representatives, who she refused to name, had told her to put HCP coffee expenses under parking to make it easier when submitting expense reports. Note however Rachel's other HCP's expenses where already far in excess of her peers not including these alleged coffee expenses.

- On 23 occasions since January of 2023 Rachel charged out of pocket parking expenses at hospitals that have parking fees but she submitted parking expense fees for more than what the hospitals charge. For example Jan 23, 2024, Rachel charged $20 out of pocket valet fees that are either $6 or $8. When Rachel actually uses her corporate credit card at this same location the charge is $6.

**Confidential**
THIS DOCUMENT IS INTENDED FOR THE SOLE USE BY ABBOTT MANAGEMENT AND HUMAN RESOURCES INVOLVED WITH THE DECISION-MAKING PROCESS OF THE CURRENT RECOMMENDATION AND IS NOT INTENDED TO BE COPIED OR DISTRIBUTED.

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

Abbott_00003516

- On December 9, 2023, Regional Sales Director, Tim Powers sent an email to the expanded team including Rachel, reminding the team of the requirement to use the corporate credit card for all expenses unless there is an extenuating circumstance, also that reports are being audited.
  - Rachel disregarded that reminder and from the date of that email until January 23, 2024, Rachel had 22 out of pocket transactions for a total of $551.77.

- Rachels' explanation for her submitting so many out of pocket transactions was because she leaves her wallet in the car and uses her Apple Watch to do Apple Pay. However her personal credit card statement does not reflect a majority of expenses she submitted as out of pocket.
  - From November 24 to January 23, 2024, Rachel submitted $1117.83 in out of pocket expanses yet her personal Apple Pay credit-card statement only accounts for $440.23.

- Since January 1, 2023- January 31, 2024, Rachel submitted 126 out of pocket expanses totaling $4856.73 which includes HCP food and parking expenses that are all far higher than the expenses reported by her peers, more than double than that of the next highest peer.

In summary Rachel did not provide a plausible explanation for her failure to explain what appears to be excessive out of pocket expenses without receipts and without a personal credit card statement that supports these expenses. Additionally Rachel did not sound credible in her explanation to Employee Relations and initially lied about paying parking and valet expenses at multiple locations where there is free parking and no valets.

The recommendation is that Rachel be terminated for violating Abbott's Code of Conduct by knowingly submitting false expense reports and not being forthright during the investigation..

- **Is the employee currently suspended?** ☐ Yes  ☒ No

- **Term of Year Agreement - TOY?**          ☐ Yes  ☒ No
  (Commercial employees only. Confirm with BHR that TOY requirements are met and Legal was consulted.)

- **State requirements for final paycheck?** ☐ Yes  ☒ No **(See below)**
  CA, CO, CT, DC, HI, MA, MN, MO, NV, OR, UT: Final paychecks must be **delivered to the employee on the date of termination.**
  NH, VT: Final paychecks must be **delivered to the employee within 72 hours of the termination.**

**Confidential**
THIS DOCUMENT IS INTENDED FOR THE SOLE USE BY ABBOTT MANAGEMENT AND HUMAN RESOURCES INVOLVED WITH THE DECISION-MAKING PROCESS OF THE CURRENT RECOMMENDATION AND IS NOT INTENDED TO BE COPIED OR DISTRIBUTED.

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    Abbott_00003517