**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

RACHAEL ROSE,

        Plaintiff,

    v.

ABBOTT LABORATORIES, INC., and
COLLEEN LEWIS,

        Defendants.

No. 25 CV 1604

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Rachael Rose worked as an Endovascular Account Manager for Abbott Labs—a job that at times required wining and dining Abbott customers. One of Rose's supervisors, Colleen Lewis, encouraged her team members to build rapport with their clients, even through sexualization usually viewed as inappropriate for the workplace. Rose claims that, after she objected to those demands, the supervisor did everything in her power to have Rose terminated. After Rose got a new supervisor, she was investigated for discrepancies in her expense reports. Abbott Employee Relations concluded that Rose had knowingly submitted false expense reports and lied about it during the investigation. As a result, her employment was terminated. Rose then sued Abbott for wrongful termination and maintaining a hostile work environment, and Lewis for aiding and abetting discrimination. Abbott and Lewis now move for summary judgment on all of Rose's claims. [40]. For the reasons discussed below, the motion is granted.

## I.  Legal Standards

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When considering a motion for summary judgment, I view the facts and draw all inferences in the light most favorable to the nonmoving party. *Zemlick v. Burkhart*, 164 F.4th 1004, 1010 (7th Cir. 2026). I do not weigh evidence or make credibility determinations—those tasks are entrusted to the jury. *Id.*

## II.  Local Rule 56.1 and Evidentiary Rulings

Local Rule 56.1 "aims to make summary-judgment decisionmaking manageable for courts." *Kreg Therapeutics, Inc. v. VitalGlo, Inc.*, 919 F.3d 405, 415 (7th Cir. 2019). The moving party must file a statement of facts that demonstrates its entitlement to judgment as a matter of law. *See Petty v. City of Chi.*, 754 F.3d 416, 420 (7th Cir. 2014); N.D. Ill. Local R. 56.1(a)(2). The nonmoving party must file a response to that statement and may provide a separate statement of additional facts. N.D. Ill. Local R. 56.1(b)(2)–(3).

Both statements of facts and additional material facts must consist of concise numbered paragraphs, supported by citations to specific pages in the evidentiary record. *See* N.D. Ill. Local R. 56.1(d)(1)–(2). The responding party must cite specific,

2

admissible evidence to dispute an asserted fact and concisely explain how the cited material controverts the asserted fact. N.D. Ill. Local R. 56.1(e)(3). Any asserted fact that is not controverted by reference to specific, admissible evidence is deemed admitted. *Id.*; *see Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). It is not a rule violation for a response to make an objection, but "[i]n the event that the objection is overruled, the failure to admit or dispute an asserted fact may constitute a waiver." N.D. Ill. Local R. 56.1(e)(2).

Abbott argues that every denial and objection, except for ¶ 31, in Rose's 56.1 response (as well as one admission) is improper. *See* [53] at 3.[1] Abbott is, for the most part, correct that Rose's responses either fail to cite specific evidence creating a genuine dispute of material fact or consist of impermissible legal arguments. That is not true for all of Rose's responses, however. Many of Rose's responses consist of only an objection without a denial or admission. *See* [49] ¶¶ 11, 13, 14, 16, 28, 34, 46, 49 & 50. Those responses do not violate 56.1, so are not admitted on that basis alone. I resolve all evidentiary objections first, then assess whether the remainder of the response (if any) is sufficient under local rules.

Rose makes numerous objections to Abbott's statement of material facts on the grounds of hearsay. *See* [49] ¶¶ 29, 44–47, 49, 50, 51, 53, 54, 59, 60 & 65. Those objections are sustained as to ¶¶ 44–47, 49, 50 & 53, and I do not consider those

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except in the case of citations to depositions, which use the deposition transcript's original page number. The docketed copy of Rose's deposition transcript does not include original page numbers, so those citations are to the page numbers in the header.

assertions of fact in deciding this motion. The objections to ¶¶ 29 & 54 are overruled because the testimony is not being offered for the truth of the matter asserted. Fed. R. Evid. 801(c). The objection to ¶ 51 is overruled because the supporting exhibits are statements of a party opponent. Fed. R. Evid. 801(d)(2). The objections to ¶¶ 59, 60 & 65 are overruled because the supporting exhibit is a record kept in the course of a regularly conducted business activity. Fed. R. Evid. 803(6). Rose also objects throughout her response to Abbott's statement of material facts on the grounds of vagueness, ambiguity, immateriality, argumentativeness, mischaracterizing testimony, and lack of evidentiary support. Many of those generalized objections lack merit, and I overrule them. *See* [49] ¶¶ 5, 6, 11, 13, 14, 16, 17, 19–21, 28, 34, 36–39, 43, 55–57 & 70.

As to all facts for which Rose's response made an overruled objection but did not include any further denial, the facts are deemed admitted. N.D. Ill. Local R. 56.1(e)(2). The following facts are deemed admitted because the factual material cited does not create a genuine dispute: ¶¶ 1–4, 12, 20, 22, 23, 25–27, 30, 36, 39, 48, 52, 55–66 & 68–70. The following facts are deemed admitted because, after resolving any objections, the denials consist of only immaterial information and/or legal argumentation: ¶¶ 5, 7–10, 15 & 21. As to any facts for which Rose's response only disputes or admits a specific sentence or portion of the fact, the remainder of the fact is deemed admitted.

## III.    Facts

In August 2019, Rachael Rose began working as an Endovascular Account Manager for Abbott Laboratories in Cleveland, Ohio. [49] ¶ 1. In that role, Rose

4

promoted Abbott products, managed hospital inventory, and built relationships with Abbott customers through social engagements such as dinners and coffee. [49] ¶¶ 10, 24 & 27. From the date of her hire (except for a few months between the fall of 2023 and February 2024) Colleen Lewis was Rose's supervisor. [49] ¶ 22. Lewis lived in Pennsylvania and managed a team of employees in Ohio. [49] ¶ 22. Rose and Lewis mostly communicated over text, phone, email, and Microsoft Teams, but they did see each other in person four or five times per year. [49] ¶ 23.

As part of her job responsibilities, Rose was expected to go out to dinner with Abbott customers at least once a week to build a relationship. [49] ¶ 24. Rose and Abbott dispute whether male employees were also told to go out to dinner at least once per week, or if they were given more choice in scheduling dinners. [49] ¶ 24. Lewis told Rose that she should have at least two drinks when going out for dinner with clients. [54] ¶ 22. Rose had discretion about which customers to invite to any particular dinner and could invite co-workers to attend as well. [49] ¶ 26, 27. A few times a year, the dinners would be one-on-one with the customer. [49] ¶ 26.

During one such dinner, a male customer made sexual advances at Rose, including biting her on the ear and stroking her hair. [49] ¶ 38; [54] ¶ 33. When Rose reported the incident to Lewis, Lewis called Rose, agreed the conduct was not appropriate, and told Rose that she did not have to work with the customer again, including at a clinical event the following day. [49] ¶ 39. Rose decided to still attend that clinical event, but had her assistant cover future cases with that customer, which

5

Lewis supported. [49] ¶ 42. Lewis reported the incident to Abbott Employee Relations. [49] ¶ 41.

Lewis was often crude or overtly sexual with Rose and other team members. On one occasion, she grabbed the breasts of a co-worker (not Rose) and commented "these things are great." [49] ¶ 29. On another, she told Rose that she "had a hot ass" and smacked her on the butt. [49] ¶ 30. Lewis also shared sexual anecdotes that Rose found offensive or harassing, including stories about a former employee who had sex with a stripper, having sex with her male fiancé in a closet, and going to drink at a customer's home. [49] ¶ 28, 32. Rose does not allege that anyone other than Lewis and the customer who bit her ear sexually harassed her during her employment with Abbott. [43-1] at 139, 230.

In the fall of 2023, Rose's supervisors noticed she had submitted excessive out-of-pocket expenses. [43-22]. Due to a company re-alignment, Lewis was not Rose's manager from that fall until February 5, 2024. [49] ¶¶ 43, 52. For some of that gap, Tim Powers was Rose's interim manager. [49] ¶ 43. In December 2023, Rose received an email from Powers reminding her and the rest of the team that Abbott conducts internal audits of business expenses and that they are required to use the Abbott Credit Card for business expenses. [49] ¶ 48. When Rose continued to submit expense reports seeking reimbursement for out-of-pocket expenses, Lewis and Powers met with her to discuss the issue. [49] ¶¶ 51, 54, 55.

Abbott Employee Relations investigated Rose's expenses from January 2023 to January 2024 and determined that she knowingly filed multiple false expense

reports. [43-22]. Rose submitted parking expense charges on 13 occasions totaling $226 for hospitals and clinics with no parking or valet fees. [43-22]. On 23 other occasions, she submitted parking expense fees for more than the hospitals charged. [43-22]. In total, over 13 months, Rose submitted 126 out of pocket expenses for $4,856.73, more than double that of her next highest peer. [43-22]. In the seven weeks after the email from Powers reminding the team of the requirement to use the corporate credit card, Rose still submitted 22 out of pocket transactions totaling $551.77. [43-22].

When interviewed about her expense reports, Rose initially explained that her submissions varied depending on the fee, or the bill denominations she had on her, or whether the valet was helping carry a lot of materials. [43-22]. After she was told that those locations have no fees or valets, she changed her explanation and said that more senior sales representatives, who she refused to name, had told her to put coffee expenses under parking to make it easier when submitting expense reports. [43-22]. Rose also explained that she submitted so many out-of-pocket transactions because she leaves her wallet in the car and uses Apple Pay on her Apple Watch. [43-22]. When Employee Relations reviewed the Apple Pay statement she voluntarily provided, however, it only accounted for $440.23 out of the $1,117.83 in out-of-pocket expenses she submitted between November 24, 2023 and January 23, 2024. [43-22].

The investigation concluded that Rose did not provide a plausible explanation for her excessive out-of-pocket expenses and initially lied about paying parking and valet expenses at locations with free parking and no valets. [43-22]. Because those

were violations of Abbott's Code of Conduct, termination was recommended. [43-22]. On or about March 26, 2024, Abbott terminated Rose's employment. [49] ¶ 65. After her termination, Rose texted Lewis apologizing for "the damage caused by [her] lapse in judgment" and stating that she understood "this was my doing and my mistake." [49] ¶ 66. Rose was eventually replaced by a new male employee. [54] ¶ 3.

## IV. Analysis

In her complaint, Rose asserted both state and federal claims against Abbott for wrongful termination and creating a hostile work environment. [16] ¶¶ 65–99. Abbott moves for summary judgment on all of Rose's claims. [40]; [41] at 3. In her response to the motion for summary judgment, Rose only requests that I deny the motion as to her state-law claims. [52]. Since Rose has abandoned them, Abbott is entitled to summary judgment on the federal claims. That leaves three claims, all under Ohio law: two claims against Abbott for wrongful termination and maintaining hostile work environment, and a claim against Lewis for aiding and abetting discrimination.

Rose filed suit in the Northern District of Ohio and the case was transferred to the Northern District of Illinois pursuant to a forum selection clause in her employment agreement. [22]. "Although the law of the transferor court continues to apply when a diversity case is transferred from one district court to another under § 1404(a), the transferee court is usually 'free to decide federal issues in the manner it views as correct without deferring to the interpretation of the transferor circuit.'" *McMasters v. United States*, 260 F.3d 814, 819 (7th Cir. 2001) (quoting *In re Korean Air Lines Disaster*, 829 F.2d 1171, 1174 (D.C.Cir.1987)) (cleaned up).

Where federal law is applicable, I am bound by Seventh Circuit precedent and treat Sixth Circuit precedent as authoritative. For issues of Ohio law, I defer to the interpretations provided by Ohio courts. Of course, the Sixth Circuit (while also bound to defer to Ohio courts for interpretations of Ohio law) possesses more familiarity with Ohio law than courts in this circuit, so I consider Sixth Circuit case law especially persuasive in this case, even though I am not bound by it.

Discrimination claims under Ohio law mirror federal law.[2] *See Williams v. Akron*, 107 Ohio St.3d 203, 205 (2005). Under Ohio law, it is unlawful for any employer "to discharge without just cause, to refuse to hire, or otherwise to discriminate against" any person with respect to any matter related to employment because of their sex. Ohio Rev. Code § 4112.02(A). Title VII makes it unlawful for an employer to discriminate against any individual with respect to the terms or conditions of their employment because of their sex. 42 U.S.C. § 2000e-2.

Because Ohio courts apply federal standards for employment discrimination when assessing such claims under Ohio law, I do the same. At the summary-judgment stage, the proper question to ask is whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's sex caused the plaintiff's discharge or other adverse employment action. *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d

---

[2] Neither party claims Illinois law applies here, but it would not change the outcome. *Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 383 (7th Cir. 2016) ("Illinois courts apply the federal Title VII framework to IHRA claims."). *See* [8-4] at 7, ¶ 15 ("the relationship of the parties shall be determined, in all respects under the laws of Illinois").

494, 499 (7th Cir. 2017) (quoting *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)).

One method of analyzing a discrimination case is the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Williams v. Akron*, 107 Ohio St.3d at 205 (adopting the same analytical framework for proving a discrimination claim under Ohio law). Under *McDonnell Douglas*, the plaintiff must first meet her burden of production by establishing that: (1) she is a member of a protected class; (2) she performed her job to her employer's expectations; (3) she suffered an adverse employment action; and (4) one or more similarly situated individuals outside her protected class received better treatment.[3] *Smith v. Chi. Transit Auth.*, 806 F.3d 900, 905 (7th Cir. 2015); *Patterson v. Kent State Univ.*, 155 F.4th 635, 645 (6th Cir. 2025). "The burden then shifts to the employer to present a 'legitimate, non-discriminatory reason' for the employment decision." *Vichio v. US Foods, Inc.*, 88 F.4th 687, 691 (7th Cir. 2023) (citing *Bless v. Cook Cnty. Sheriff's Off.*, 9 F.4th 565, 574 (7th Cir. 2021)). "If the employer presents a legitimate reason, the burden shifts back to the employee to show the proffered reason is a pretext for discrimination." *Vichio*, 88 F.4th at 691 (citing *Bless*, 9 F.4th at 574).

Regardless of the framework used, the ultimate question is whether the evidence, considered as a whole, would permit a reasonable factfinder to conclude

---

[3] Rose contends that the fourth element is different under Ohio law, but her formulation is just a different way of wording the disparate treatment requirement for other factual scenarios. *See McDonnell Douglas*, 411 U.S. at 802 n.13 ("The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations.").

that the plaintiff's sex caused the discharge or other adverse employment action. *Ortiz*, 834 F.3d 760, 765 (7th Cir. 2016); *Gohl v. Livonia Pub. Schs. Sch. Dist.*, 836 F.3d 672, 683 (6th Cir. 2016) (citing *Ortiz*, 834 F.3d at 765) ("The labels we might attach to evidence—'direct' or 'indirect'—do not matter. Evidence counts as long as it is relevant to the purported reasonable jury's inquiry."). Rose analyzes her case under the burden-shifting framework of *McDonnell Douglas*, so I do as well.

Abbott argues that Rose has failed to make a prima facie showing because she cannot show that she met her employer's legitimate expectations. [41] at 4–6; [53] at 6–7. Whether the employee performed her job to her employer's expectations overlaps with pretext, so the two can be dealt with at once. *See Bragg v. Munster Med. Rsch. Found. Inc.*, 58 F.4th 265, 271 (7th Cir. 2023); *Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 477–78 (7th Cir. 2010); *see also Smith v. City of Union, Ohio*, 144 F.4th 867, 874 (6th Cir. 2025) (moving straight to the question of pretext).

To give rise to pretext, "explanations must actually be shifting and inconsistent." *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 881 (7th Cir. 2016) (quoting *Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 577 (7th Cir. 2003)). "Merely providing multiple, or additional, reasons for an adverse employment decision does not establish pretext." *Saud v. DePaul Univ.*, 154 F.4th 563, 569 (7th Cir. 2025). "Pretext can be proven, among other ways, by evidence (1) that the employer's explanation has no basis in fact; (2) of 'ambiguous or suggestive comments or conduct;' or (3) of 'better treatment of people similarly situated but for the protected characteristic.'" *Paterakos v. City of Chi.*, 147 F.4th 787, 797 (7th Cir. 2025);

11

*see also Kean v. Brinker Int'l, Inc.*, 140 F.4th 759, 775 (6th Cir. 2025) ("An employee may show that an employer's proffered reason for terminating him was pretext by demonstrating that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct.") (citations omitted). The pretext analysis boils down to a "commonsense inquiry": "did the employer fire the employee for the stated reason or not?" *City of Union*, 144 F.4th at 874 (quoting *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 285 (6th Cir. 2012)).

While Rose claims that Abbott had "changing and inconsistent reasons for why Rose was terminated," she has not identified any reason other than her false expense reports and dishonesty. *See* [52] at 4–5. Abbott was initially concerned about her false expense reports, and Rose's dishonesty during the investigation of her expense reports created an additional reason. That is not shifting or inconsistent. Those reasons are also well grounded in fact, as Rose admits that she charged expenses to parking that were not parking expenses and submitted expenses for parking fees at hospitals where parking was free. [43-1] at 214. And while Rose identified a male employee who used cash to pay for parking expenses and was not disciplined, [54] ¶¶ 7–9, he was not similarly situated because—during the relevant period—he used his corporate card for parking, [51-2] at 25:17–28:1, and there is nothing in the record to indicate that he ever submitted a reimbursement for parking at a hospital that did not charge for parking, *see* [51-2]. Abbott provided a legitimate, non-discriminatory

12

reason for its employment decision, and Rose has not carried her burden of rebutting it as pretextual.

As with claims alleging an adverse employment action based on sex, Ohio courts also look to federal case law interpreting Title VII for sexual harassment claims. *Hampel v. Food Ingredients Specialties, Inc.*, 89 Ohio St.3d 169, 175 (2000) (quoting *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.*, 66 Ohio St.2d 192, 196 (1981)) ("In prior cases, 'we have determined that federal case law interpreting Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, is generally applicable to cases involving alleged violations of R.C. Chapter 4112.'").

To prevail on a hostile work environment claim, Rose must establish that: "(1) her work environment was objectively and subjectively offensive, (2) the harassment she complained of was based on her gender, (3) the conduct was so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment, and (4) there is a basis for employer liability." *Anderson v. Mott Street*, 104 F.4th 646, 652 (7th Cir. 2024) (quoting *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 880 (7th Cir. 2018)); *Hampel*, 89 Ohio St.3d at 176–77 (a hostile work environment claim based on sexual harassment requires "(1) that the harassment was unwelcome, (2) that the harassment was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect the 'terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment,'" and (4) there is a basis for employer liability). To determine whether

13

harassment is severe or pervasive, I consider "the severity of the allegedly discriminatory conduct, its frequency, whether it was physically threatening or humiliating or merely offensive, and whether it unreasonably interfered with the employee's work performance." *Anderson*, 104 F.4th at 652 (quoting *Passananti v. Cook County*, 689 F.3d 655, 667 (7th Cir. 2012)).

In *Oncale*, the Supreme Court held "that sex discrimination consisting of same-sex sexual harassment is actionable under Title VII." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998). The Ohio Supreme Court has expressly adopted the interpretation of Title VII in *Oncale* as persuasive and applicable to Ohio Rev. Code § 4112.02(A). *Hampel*, 89 Ohio St.3d at 178. *Oncale* does not, however, create a distinct test for same-sex sexual harassment claims, as Abbott implies. *Oncale* provides three examples of how a trier of fact might infer discrimination in a case alleging same-sex harassment, but those are not exhaustive. The operative question is simply whether the claimed discrimination is "because of sex." *Oncale*, 523 U.S. at 79.

Reading the record in the light most favorable to Rose, a reasonable jury could conclude that the alleged harassment—smacking her butt, pressuring her to drink, expecting her to have weekly dinners with clients—was "because of sex," but not that it was severe or pervasive enough to affect the conditions of her employment. Rose alleges two unrelated incidents of unwelcome physical contact: a strike to her butt that she says did not "extremely upset" her, and a sexual advance from a customer that Lewis immediately reported and isolated Rose from. Beyond physical contact

14

with Rose, Lewis grabbed another co-worker's breasts in a team meeting, told Rose she "had a hot ass," and told offensive stories in mixed-gender company. "While unfortunate, such 'off-color comments, isolated incidents, teasing, and other unpleasantries' are not enough for a Title VII sexual harassment claim." *Anderson*, 104 F.4th at 652 (quoting *Swyear*, 911 F.3d at 881). Rose also never reported any of Lewis's actions to Abbott Employee Relations, and little in the record indicates that she was contemporaneously bothered by Lewis's conduct. Accordingly, Abbott is entitled to summary judgment in its favor on Rose's hostile work environment claim.

Rose's final claim is against Lewis for aiding and abetting discrimination in violation of Ohio Rev. Code § 4112.02(J). That statute, in relevant part, makes it unlawful for "any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice." *Id.* Because neither Abbott nor Lewis committed any unlawful discriminatory practices under Ohio law, the aiding and abetting claim also fails.

## V.    Conclusion

Defendants' motion for summary judgment, [40], is granted. Enter judgment and terminate civil case.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: June 9, 2026

15